UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JACQUELINE L. KENNEDY,

                              Plaintiff,      17-CV-908-FPG

v.                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## Introduction

Plaintiff Jacqueline L. Kennedy brought this action pursuant to Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits. ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 16, 22. For the reasons that follow, plaintiff's motion for judgment on the pleadings (ECF No. 16) is **granted**, the Commissioner's motion (ECF No. 22) is **denied**, and the matter is remanded to the Commissioner for further proceedings.

## Background and Procedural History

On June 19, 2015, plaintiff filed an application for supplemental security income benefits alleging disability beginning on December 1, 2014. Administrative Record ("AR.") at 85. After the application was denied, she timely requested a hearing. AR. at 95-99.

On September 6, 2016. plaintiff appeared with her then attorney, Jennifer M. Dillon, Esq., and testified at a hearing before Administrative Law Judge Stephen Cordovani ("the ALJ"). AR. at 23-84. A Vocational Expert ("VE") Kevin Yi also testified at the hearing. The ALJ issued an

1

unfavorable decision on April 21, 2017. AR. at 10-20. Plaintiff then timely requested review by the Appeals Council, which the Council denied on August 8, 2017, making the ALJ's decision the final decision of the Commissioner. AR. at 1-3. Plaintiff subsequently filed this lawsuit.

## Legal Standard

The scope of this Court's review of the ALJ's decision denying benefits to plaintiff is limited. It is not the function of the Court to determine *de novo* whether plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

This deferential standard of review does not mean, however, that the Court should simply "rubber stamp" the Commissioner's determination. "Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *see also Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) ("Because a hearing on disability

benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). While not every factual conflict in the record need be explicitly reconciled by the ALJ, "crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). Moreover, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

## Discussion

### A) The ALJ's Decision

At step one of the sequential analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2014. AR. at 12. At step two, the ALJ found that plaintiff suffered from three severe impairments: COPD, depression, and anxiety. *Id.* At step three of the analysis, the ALJ found that the severity of plaintiff's impairments did not meet or equal the criteria of any listing. AR. at 13-14. The ALJ then determined that plaintiff retained the residual functioning capacity ("RFC") to perform light work with additional limitations. Specifically, the ALJ found that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, extreme cold, heat, wetness, or humidity. He also

determined that she can understand, remember and carry out simple instructions and tasks; have no supervisory duties and independent decision-making; and can tolerate minimal changes in work routine and processes. AR. at 15. At step four, the ALJ found that plaintiff did not have past relevant work. The ALJ then proceeded to step five, where she determined that there are jobs in the national economy that a person of plaintiff's age, education and work experience could perform. AR. at 19. Specifically, the ALJ determined that plaintiff can perform work as a hand packager, merchandise marker and produce sorter. *Id.*

### B) Analysis

Plaintiff argues that the ALJ and the Appeals Counsel failed to develop the record by not issuing a subpoena to obtain over six hundred pages of medical records from Buffalo General Hospital ("BGH" hereinafter). *See* Pl's Br. 9 (ECF No. 16-1). This Court agrees.

As a general matter, it is the burden of the claimant to provide medical evidence to show she is disabled. *See* 20 C.F.R. § 404.1512 (c). Nevertheless, because Social Security proceedings are inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000), "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted). As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 111. Therefore, under the applicable regulations, prior to making a disability determination, the ALJ is required to develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal citation omitted); *see also Mauzy v. Colvin*, No. 5:12-cv-866 (GLS/ESH), 2014 WL 582246, at *5 (N.D.N.Y. Feb. 13, 2014)

("[A]dministrative law judges, as fact finders, may not automatically rely on absence of probative evidence 'without making an affirmative effort to fill any gaps in the record . . . .'") (internal citation omitted). However, the ALJ's obligation to develop the record is not infinite and limitless, and does not extend to circumstances where the record contains sufficient evidence to allow the ALJ make her determination. *Guile v. Barnhart*, No. 5:07-cv-259 (GLS), 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010) (further development of the record is unnecessary where the evidence received by the ALJ is consistent and sufficient to determine whether a claimant is disabled). (internal citations omitted); *Valoy v. Barnhart*, No. 02 Civ. 8955(HB), 2004 WL 439424, at *7 (S.D.N.Y. Mar. 9, 2004) ("While the ALJ must supplement the record through his own initiatives when the record is incomplete or inadequate, this burden does not attach when the record is ample.")

The regulations specifically provide that the ALJ has to make every reasonable effort to help the claimant obtain medical evidence to fulfill his duty to develop the claimant's complete medical history. *See* 20 C.F.R. § 416.912(b)(1). The regulations define every reasonable effort as the ALJ's ability to make an initial request for documents to medical sources that maintain the evidence, and, in the event the evidence has not been received, a follow-up request to obtain the missing evidence. *Id.* Aside from the document requests, the regulations also provide that the ALJ or the Appeals Counsel "may, on his or her own initiative or at the request of a party, issue subpoenas for . . . the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing." 20 C.F.R. § 404.950 (d). It has been well-established that the decision to issue a subpoena lies within the discretion of the ALJ and is exercised when the record is incomplete. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("The plain language of [20 C.F.R. § 404.950 (d)(1)] clearly places the decision to issue a subpoena within the sound

5

discretion of the ALJ."); *Treadwell v. Schweiker*, 698 F.2d 137, 141 (2d Cir. 1983) (the ALJ may issue and enforce a subpoena requiring production of documents); *Ebelink v. Colvin*, No. 6:14-cv-06726(MAT), 2015 WL 9581787, at *3 (W.D.N.Y. Dec. 30, 2015) (the ALJ could issue a subpoena to obtain missing teacher questionnaire); *Carroll v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 872 F. Supp. 1200, 1204 (E.D.N.Y. 1995) (the ALJ may issue a subpoena requiring production of any evidence relating to a matter under his or her consideration where a claimant's record is inconsistent and incomplete); *Almonte v. Apfel*, No.96 Civ.1119(JGK), 1998 WL 150996, at *7 (S.D.N.Y. Mar. 31, 1998) (when limited records are produced, possible avenues the ALJ can pursue include issuing a subpoena, enforcing the subpoena, and providing advice to the plaintiff of the importance of the evidence); *but see Baker v. Colvin*, No. 1:15-cv-00388-MAT, 2017 WL 5589483, at *4 (W.D.N.Y. Nov. 21, 2017) (the ALJ properly exercised his discretion not to issue a subpoena to cross-examine plaintiff's physician when he obtained a complete medical record); *Christy v. Comm'r of Soc. Sec.*, No. 5:13-CV-1552 (GTS/WBC), 2015 WL 6160165, at *13 (N.D.N.Y. Oct. 20, 2015) (when the record was fully developed the ALJ properly exercised his discretion not to issue a subpoena to examine medical experts).

Here, even though this Court recognizes the ALJ's efforts to keep the record open and obtain plaintiff's records by issuing two document requests to BGH following the hearing, it, nonetheless, finds that the ALJ had sufficient basis to exercise his discretion to subpoena the missing records from BGH. In fact, the ALJ first became aware that the large number of plaintiff's records from BGH were missing on September 20, 2016, when plaintiff's counsel advised him that 671 pages of medical records sent by BGH to HealthPort were available to plaintiff for purchase. AR. at 203. The record contains a copy of the invoice received by plaintiff's counsel demonstrating that HeatlhPort had requested a payment of $ 505.25 from plaintiff for 671 pages

of her medical records obtained from BGH. AR. at 205. At that time, plaintiff was unemployed, was living with her mother and daughter, and was financially unable to cover such fee because it represented one-half of her family's monthly income. AR. at 125. Following the ALJ's receipt of counsel's correspondence, he sent two requests to BGH to obtain plaintiff's outstanding medical records. AR. at 208, 212-16. It appears that BGH had complied, at least partially, with both requests. Specifically, in response to his September 21, 2016 request (AR. at 208), BGH supplied 218 pages of records (AR. at 395-12), and 49 pages of records in response to the ALJ's November 22, 2016 document demand. AR. at 618-66.[1] Nonetheless, the hospital's post-hearing production of 267 page of additional medical records was a far cry from 671 pages that were initially sent by BGH to HealthPort and offered to plaintiff for purchase. Taking into account medical records submitted by BGH before the hearing - 91 pages for the time period between March 10, 2010 and May 26, 2016 (AR. at 268-57) and 19 pages for September 2, 2014 until December 18, 2014 (AR. at 224-42) - it remains apparent that there were nearly 300 pages of plaintiff's medical records that have not been produced by BGH to the ALJ. Such number is significant, especially considering that plaintiff's entire medical file was 448 pages long. AR. at 224-72.

While the Commissioner is correct to argue that the regulations do not obligate the ALJ to issue a subpoena, and instead, provide him with discretion to do so only "if reasonably necessary for the full presentation of the case," the Court does not find that the ALJ was justified in not issuing a subpoena to obtain plaintiff's missing records from BGH. When, if not in this case, where hundreds of pages of medical records are missing from plaintiff's medical file, would the ALJ exercise such discretion? The Commissioner argues that the ALJ was not obligated to issue

---

[1] Plaintiff contends that BGH provided only 49 pages of plaintiff's medical records while 600 pages remained missing. Pl.'s Br. 14. It appears that plaintiff did not consider the records provided by BGH in response to the ALJ's first document request.

a subpoena, and as a result, did not violate his duty to develop the record, because the ALJ "had more than enough evidence in the record to make an informed decision as to Plaintiff's abilities." Def.'s Br. 17. The Court disagrees with such contention because before deciding whether the Commissioner's decision is supported by substantial evidence it "must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record.'" *Scott v. Astrue*, No. 09–CV–3999 (KAM)(RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). Where the ALJ has violated such duty, remand is appropriate. *Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision."); *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (remand was particularly appropriate when the ALJ "failed to seek potentially relevant information from a number of . . . doctors and treatment facilities"); *Jones v. Apfel*, 66 F. Supp. 2d 518, 542 (S.D.N.Y. 1999) ("[B]ecause the ALJ failed to adequately develop the record in reaching his determination of [plaintiff'] residual functional capacity, the Court need not—indeed, cannot—reach the question of whether the Commissioner's denial of benefits was based on substantial evidence.")

Here, with such overwhelming amount of missing records from BGH, it is simply impossible to conclude with an absolute certainty the degree to which such records address plaintiff's limitations, and whether or not their review would persuade the ALJ to alter his decision regarding plaintiff's disability in general and RFC in particular. However, based on its review of the existing record and plaintiff's hearing testimony, the Court is certain that the review of the missing records could be central to the ALJ's disability determination since the hospital handled

most of plaintiff's medical needs, including her primary care and emergency room visits. AR. at 30, 54, 56, 389-94, 396-10, 620-72; *see Davis v. Colvin*, No. 15-CV-479-MJR, 2016 WL 4708515, at *7 (W.D.N.Y. Sept. 9, 2016). The ALJ himself had determined that such records were pertinent to his determination on plaintiff's claims when he kept the record open and requested these records from BGH following the hearing. *Harris o/b/o N.L.K. v. Berryhill*, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018) ("The fact that the essential treatment records were requested, but not received, 'does not obviate the ALJ's independent duty to develop the record,' particularly since the ALJ could have exercised his power to subpoena them, but did not.") (internal citation omitted).

Additionally, the ALJ made a number of references in his decision to the lack of evidence in the record, which arguably could be resolved by the missing records from BGH. Specifically, the ALJ determined that plaintiff's back pain was not a severe impairment due to the lack of treatment notes related to her back, while pointing to plaintiff's unremarkable physical examinations when she demonstrated normal strength and gait, and lack of distress. AR. at 12, 16, 17. However, plaintiff complained of back pain during her examination by the consultative examiner Dr. Liu, who diagnosed plaintiff with chronic low back pain. AR. at 253. Similarly, additional treatment notes or medical opinions related to functional effects of plaintiff's anxiety and COPD could be particularly important, because the ALJ, while finding both impairments to be severe, determined that the record did not support the extent to which plaintiff alleged her limitations due to COPD and anxiety, noting plaintiff's lack of continual treatment, unremarkable respiratory examinations, intact memory, and cooperative behavior. AR. at 16-17.

Therefore, this Court finds that such overwhelming amount of missing records from BGH was sufficient for the ALJ to exercise his discretion to subpoena and review them before issuing

his decision. The ALJ's failure to do so requires remand.[2] *Rosa*, 168 F.3d at 83 (the ALJ's further review of plaintiff's records "would so plainly help to assure the proper disposition of [plaintiff's] claim"); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-474-FPG, 2018 WL 4940726, at *4 (W.D.N.Y. Oct. 12, 2018) (the ALJ committed harmful error when she fails to subpoena medical records that were "reasonably necessary" to the claimant's case); *Jones v. Apfel*, 66 F. Supp. 2d 518, 542 (S.D.N.Y. 1999) (remand where the ALJ failed to subpoena medical records, explain why records were necessary, and inform plaintiff that she could subpoena treating physician); *Mejias v. Apfel*, No. 96 Civ. 9680 MBM, 1998 WL 651052, at *6 (S.D.N.Y. Sept. 23, 1998) (the ALJ violated his duty to assist plaintiff in obtaining medical records when he did not consider his authority to issue subpoenas); *Almonte*, 1998 WL 150996, at *7 (the ALJ rendered his decision after failing to subpoena relevant medical records). On remand, the Commissioner is directed to subpoena the remaining records from BGH, and evaluate such records to determine whether plaintiff's medical impairments render plaintiff disabled. Such further proceedings shall be completed by the Commissioner within 60 days of the issuance of this order.

## Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (ECF No. 16) is **granted**, the Commissioner's motion for judgment on the pleadings (ECF No. 22) is **denied**, and the case is remanded for further administrative proceedings consistent with this Decision and

---

[2] Similarly, the Appeals Counsel should have exercised its discretion to subpoena plaintiff's missing records in accordance with 20 C.F.R. § 404.950 (d) when it was advised by plaintiff's counsel that it had not been done by the ALJ and that plaintiff was not able to afford to pay for the records. Instead, the Appeals Counsel erroneously believed that the ALJ had subpoena plaintiff's records. AR. at 1.

Order pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: February 26, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court